**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Rodney Raymond,                                       Civil No. 15-35 (DWF/LIB)

     Plaintiff,

v.                                                                    **MEMORANDUM**
                                                                        **OPINION AND ORDER**

Board of Regents of the University of
Minnesota, individually in their official
Capacities; and the University of
Minnesota,

     Defendants.

_____

Paul Egtvedt, Esq., Egtvedt Law Firm P.L.C., counsel for Plaintiff.

Brian J. Slovut, Esq. and Tracy M. Smith, Esq., University of Minnesota, counsel for
Defendants.

_____

**INTRODUCTION**

   This matter is before the Court on Defendants Board of Regents of the University

of Minnesota, individually in their official Capacities ("Regents"), and the University of

Minnesota's ("University") Motion to Dismiss (together, "UMN" or "Defendants").

(Doc. No. 13.)  For the reasons set forth below, the Court grants the motion.

**BACKGROUND**

   Plaintiff Rodney Raymond ("Plaintiff" or "Raymond") alleges that beginning in

2009, UMN in Duluth began investigations against him for alleged violations of school

policies.  (Doc. No. 8, Am. Compl. ¶ 5.)  Plaintiff denied the allegations, but the UMN in

Duluth found against Plaintiff in each investigation. (*Id.*) Plaintiff appealed each determination. (*Id.*) Plaintiff alleges that in one of the investigations, the evidence against him was biased and involved collusion, and a UMN of Duluth panel ultimately agreed. (*Id.* ¶ 6.) According to Plaintiff, the UMN commenced a new investigation in which it relied on the old biased information. (*Id.* ¶ 7.) Plaintiff alleges that he requested that there be no new investigation because an investigation would be a violation of his rights. (*Id.*) According to Plaintiff, the UMN proceeded with a new investigation with biased UMN counsel. (*Id.*) Plaintiff alleges that this second investigation was overly broad in scope and was not in the confines of any policy. (*Id.* ¶ 8.) Plaintiff alleges that the new investigator in the second investigation engaged in unprofessional communication with Plaintiff's counsel; failed to investigate the collusion in the original investigations; exceeded the scope of his investigatory mandate; distorted witness statements; and came to erroneous conclusions. (*Id.* ¶ 9.) Plaintiff further alleges that discipline against him was based on this faulty investigation. (*Id.*) Plaintiff alleges that he was never allowed to examine witnesses. (*Id.* ¶ 10.) Plaintiff alleges that he sought a hearing to address his grievances concerning alleged UMN misconduct and the violations of his constitutional rights, but his request was denied on December 12, 2012. (*Id.* ¶¶ 11, 12.)

Plaintiff alleges that on April 10, 2013, UMN counsel informed him of an investigation report finding that "just cause" existed to discipline him for violations of UMN policy. (*Id.* ¶ 13.) Plaintiff further alleges that on April 25, 2013, he was informed by letter that the Vice Chancellor for student Life and Dean of student Life at the UMN

in Duluth was planning to terminate his employment with the UMN and that he had not

had the opportunity to respond to the April 10, 2013 determination.  (*Id.* ¶ 14.)

Plaintiff claims that on May 1, 2013, he filed a petition with the UMN Office of

Conflict Resolution ("OCR"), seeking a hearing on the findings noted in the April 10,

2013 letter and regarding his termination.  (*Id.* ¶ 15.)  Plaintiff alleges that at this time

there were news reports that included reputation-damaging references to his termination

and highlighting accusations of sexual harassment by Plaintiff.  (*Id.* ¶ 16.)

Plaintiff alleges that on August 8, 2013, the OCR issued a decision that would

allow Plaintiff to address the findings against him in front of a panel.  (*Id.* ¶ 17.)

However, according to Plaintiff, on October 13, 2013, the decision allowing Plaintiff to

contest the findings was overturned.  (*Id.* ¶ 18.)  Plaintiff also alleges that on November

7, 2013, he requested recusal of a hearing officer from the panel and requested a new

panel.  (*Id.* ¶ 19.)  According to Plaintiff, no new panel was formed, the hearing officer

did not recuse herself, and the panel was allowed to consider prior investigative findings.

(*Id.* ¶ 20.)  Plaintiff states that on February 5, 2014, he informed the OCR that he would

withdraw from the hearing process "based on the futility of the process and its inherent

unfairness and bias towards him, and because of the University's bad faith in its dealings

with him."  (*Id.* ¶ 21.)  Plaintiff alleges the process was unfair, biased and harassing, and

that continued participation would be problematic for him.  (*See id.* ¶¶ 21-22.)

Plaintiff also alleges that on September 19, 2014, he demanded a post-termination

hearing before the Regents and requested outside counsel, and his requests were again

denied.  (*Id.* ¶¶ 23, 24.)  Finally, Plaintiff alleges that "[t]he publicity surrounding his

3

termination, especially as it relates to allegations of sexual harassment, is stigmatizing and damaging to Plaintiff's reputation and has caused him reputational damage and lost opportunities in the field of public motivational and other types of speaking." (*Id.* ¶ 25.)

Plaintiff appears to assert the following claims against both Defendants: (I) Procedural Due Process Violation – Liberty Interest; and (II) Procedural Due Process Violation – Property Interest. (*Id.* ¶¶ 26-42.) Plaintiff seeks damages and injunctive relief. (*Id.* at 15.) Defendants move to dismiss Plaintiff's claims under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (*See* Doc. Nos. 13, 15.)

## DISCUSSION

## I. Legal Standard

### A. Fed. R. Civ. P. 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the United States Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## B.      Fed. R. Civ. P. 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction. To survive a motion to dismiss for lack of subject matter jurisdiction, the party asserting jurisdiction has the burden of proving jurisdiction. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000) (citation omitted). "Subject-matter jurisdiction is a threshold requirement which must be assured in every federal case." *Kronholm v. F.D.I.C.*, 915 F.2d 1171, 1174 (8th Cir. 1990).

A motion to dismiss for lack of subject matter jurisdiction may challenge a plaintiff's complaint either on its face or on the factual truthfulness of its averments. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citations omitted). When a defendant brings a facial challenge—a challenge that, even if truthful, the facts alleged

5

in a claim are insufficient to establish jurisdiction—a court reviews the pleadings alone, and the non-moving party receives the same protections as it would defending against a motion brought pursuant to Rule 12(b)(6).  *Id.* (citation omitted).  In a factual challenge to jurisdiction, the court may consider matters outside the pleadings, and the non-moving party does not benefit from the safeguards of Rule 12(b)(6).  *Id.* at 728-30 n.4 (citations omitted) (holding that on a Rule 12(b)(1) motion challenging subject-matter jurisdiction, the court "has authority to consider matters outside the pleadings").

### C.     Section 1983 claims against the University

Defendants first argue that because the University is a state entity, it is not subject to suit under § 1983.  The Court agrees.

The Eighth Circuit Court of Appeals has held that the UMN is an agency of the State of Minnesota and is therefore immune from suit in federal court under the Eleventh Amendment.  *Treleven v. Univ. of Minn.*, 73 F.3d 816, 818-19 (8th Cir. 1996) ("We previously have determined that the University of Minnesota is an instrumentality of the state and entitled to share in the state's Eleventh Amendment immunity").  The Eleventh Amendment provides that states and their agencies are immune from suit in federal court, unless the state has consented to be sued, or Congress has abrogated the state's immunity by some express statutory provision.  *See Will v. Mich. Dep't. of State Police,* 491 U.S. 58, 66-67 (1989); *see also Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995).  Plaintiff has not alleged that Congress has abrogated the Eleventh Amendment immunity with respect to the claims that he is attempting to bring in this case, and there is no indication that the University has waived its immunity and

consented to be sued here.  Further, §1983 imposes liability on any "person" who deprives another of constitutional rights.  *See* 42 U.S.C. § 1983.  It is well established that state entities are not "persons" under § 1983 and therefore are not subject to suit.  *See Will*, 491 U.S. at 71.

Thus, the Court concludes that the University is not subject to suit and therefore must be dismissed.[1]

> **D.**     **Section 1983 claims against the Regents**
>
> > **i.**     **Damages**

Defendants also argue that because the Regents are not subject to claims brought under § 1983 for damages, the Court should formally dismiss any claims for damages. The Court again agrees.

"[T]he Eleventh Amendment prohibits federal-court lawsuits seeking monetary damages from individual state officers in their official capacities because such lawsuits are essentially 'for the recovery of money from the state.'"  *Treleven*, 73 F.3d at 818 (citing *Ford Motor Co. v. Dep't of Treasury,* 323 U.S. 459, 464 (1945)).  Further, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983" when sued for damages.  *Id.* (citing *Will,* 491 U.S. at 71).

---

[1]     In a footnote in his brief in opposition to the motion to dismiss, Plaintiff states that "[t]he University itself is not yet a party to this matter in any way, and therefore a dismissal as to it would be procedurally inappropriate."  (Doc. No. 24 at 12 n.1.)  The Court is not clear what Plaintiff means by this statement as the University is mentioned as a party in the Complaint, is included in the caption, and was served.  As a result, the Court considers claims against the University irrespective of Plaintiff's statement and now dismisses the University as outlined above.

Here, there is no ambiguity regarding whether the suit is against the Regents in their individual or official capacities—Plaintiff has sued the Regents in their official capacities, as stated in his Complaint, and is seeking damages. (*See generally* Am. Compl.) Therefore, Plaintiff cannot proceed with his claims insofar as they seek damages. [2]

### ii.    Injunctive Relief

Unlike Plaintiff's claim for damages against the Regents, "[a]ctions in federal court seeking injunctive relief against state officials, however, are not always barred by the Eleventh Amendment." *Treleven*, 73 F.3d at 819 (citations omitted). In fact, "suits may be brought in federal court against state officials in their official capacities for prospective injunctive relief to prevent future violations of federal law." *Id.* (quoting *Fond du Lac Band of Chippewa Indians v. Carlson*, 68 F.3d 253, 255 (8th Cir. 1995)). Additionally, state officials are subject to suit under § 1983 when sued in their official capacities because "state officials are 'persons' under § 1983 when sued for injunctive relief because such actions 'are not treated as actions against the State.'" *Id.* (quoting *Will*, 491 U.S. at 71 n.10). Thus, because Plaintiff seeks injunctive relief against the Regents in their official capacities, Plaintiff's claims against the Regents for injunctive relief are not barred by immunity.

Defendants, however, contend that even if claims against the Regents are not barred under the Eleventh Amendment, Plaintiff still fails to state a claim because:

---

[2]    Plaintiff appears to agree, he states: "Raymond concedes that the record as currently comprised does not support a claim for damages, although discovery may well provide such a basis." (Doc. No. 24 at 12 n.1.)

(1) Plaintiff fails to allege any conduct that would provide a basis for injunctive relief; and (2) Plaintiff has generally failed to adequately state a claim for any due process violations.  (*See* Doc. No. 15 at 4-13.)  The Court addresses each argument below.

### 1.    Actionable conduct

Defendant argues that Plaintiff fails to allege any conduct that would provide a basis for injunctive relief.  "To establish liability in an official-capacity suit under Section 1983, a plaintiff must show either that the official named in the suit took an action pursuant to an unconstitutional governmental policy or custom, or that he or she possessed final authority over the subject matter at issue and used that authority in an unconstitutional manner."  *Nix v. Norman*, 879 F.2d 429, 433 (8th Cir. 1989) (internal citations omitted).

Defendants contend that Plaintiff has failed to meet the requirements in *Nix* in order to establish liability.  (*See* Doc. No. 15 at 4 (citing *Nix*, 879 F.2d at 433).)  Defendants contend that Plaintiff focuses on two facts alone:  (1) in November or December of 2012, Plaintiff requested a pre-termination hearing, but was denied by the Regents; and (2) in September or October of 2014, Plaintiff requested a post-termination hearing, but was denied by the Regents.  (*See id.* at 5.)  Defendants assert that these facts cannot support claims for constitutional violations because there is no constitutional obligation for *the Regents* to provide such hearings.

Plaintiff counters that he more than adequately survives Defendant's Rule 12 motion.  Plaintiff states that UMN policy clearly "endow[s]" the Regents "with the responsibility to act as a court of appeals when appropriate."  (Doc. No. 24 at 12.)

Plaintiff asserts that "there can be no doubt" that the Regents have a responsibility to act as an appeal board in a situation where an employee has alleged he has been denied his due process rights.

Here, Plaintiff alleges that "[t]he Regents are empowered to resolve employment related issues." (Am. Compl. ¶ 3.) Plaintiff further alleges that he requested that the Regents intervene in the investigation against him as a court of appeal as allowed by UMN policy. (*Id.* ¶ 11.) Plaintiff asserts that, pursuant to this policy, the Regents possessed final authority over the subject matter at issue. (*Id.*) According to Plaintiff, the Regents themselves denied Plaintiff's request. (*Id.* ¶ 12.) Thus, for purposes of a motion to dismiss, Plaintiff sufficiently alleges that the Regents have "final authority over the subject matter at issue" and that they "used that authority." *Nix*, 879 F.2d at 429. The Court therefore concludes that these allegations are sufficient to adequately "state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, and that the Complaint should not be dismissed on these grounds.

## 2. Due process claims

Defendants contend that Plaintiff fails to state any due process violation claims because he was afforded due process. To state a procedural due process claim, a plaintiff must demonstrate: (1) the existence of a constitutionally protected liberty or property interest; and (2) that the defendant deprived him of that interest without constitutionally adequate process. *See Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013); *Schmidt v. Des Moines Pub. Schs.*, 655 F.3d 811, 817 (8th Cir. 2011). "Procedural due process fundamentally requires that an aggrieved party be provided with an opportunity to be

heard at a meaningful time and in a meaningful manner." *Simon v. Anoka Cnty. Soc. Servs.*, Civ. No. 12- 2754, 2014 WL 6633077, at *17 (D. Minn. Nov. 21, 2014) (citations omitted). "However, the process a plaintiff is due is contingent upon the nature of the interest at stake." *See id.* (citing *Bohn v. County of Dakota,* 772 F.2d 1433, 1435–36 (8th Cir. 1985)).

Plaintiff alleges that he has a liberty interest in his good name. An employee has a liberty interest in his good name and reputation, which are entitled to due process protection when a discharge is based on stigmatizing allegations. *See Winskowski v. City of Stephen*, 442 F.3d 1107, 1109-10 (8th Cir. 2006); *see also Hammer v. City of Osage Beach, Mo.*, 318 F.3d 832, 839-40 (8th Cir. 2003) (citing *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972)). To show the deprivation of a liberty interest, a Plaintiff must therefore allege that: "(1) that the public employer's reasons for the discharge stigmatized the employee, seriously damaging his or her reputation or by foreclosing other employment opportunities; (2) that the employer made the reasons for the discharge public; and (3) that the employee denied the charges that led to the discharge." *Hammer*, 318 F.3d at 839-40 (citation omitted).

Plaintiff also alleges that he has a property interest in his employment because he was not an at-will employee and the UMN was required to have "just cause" for his termination. A property interest may arise from "existing rules or understandings that stem from an independent source such as state law." *Skeets v. Johnson,* 816 F.2d 1213, 1214 (8th Cir. 1987) (quoting *Roth*, 408 U.S. at 577).

Here, the parties do not appear to dispute that Defendant can adequately claim that he has a liberty interest and a property interest at stake.  Plaintiff has alleged the requisite level of damage to his reputation associated with his discharge to overcome a motion to dismiss with respect to the existence of a constitutionally protected liberty interest.  *See Hammer*, 318 F.3d at 839-40.  Similarly, although it was not detailed to the Court at this stage in the proceedings, Plaintiff has alleged he was not a typical at will employee and he therefore has a property interest such that he can overcome a motion to dismiss with respect to the existence of a constitutionally protected property interest.  Further, Defendants do not appear to object to this assertion of a property interest.

However, the parties do disagree as to the second prong of the analysis relating to whether the process provided for each liberty interest was adequate.  Defendants assert that in the case of both his alleged liberty and property interests, Plaintiff was provided with both pre-termination and post-termination processes that included the requisite hearings.  Defendants state that Plaintiff was given notice of all of the allegations against him, had the opportunity to respond, and also to appeal.  Further, Plaintiff had the opportunity to have a post-termination hearing, but withdrew voluntarily claiming that the process was unfair.  As a result, Plaintiff cannot now claim he was not offered hearing processes and Plaintiff also failed to exhaust his remedies.

Plaintiff counters that he has adequately alleged both a liberty interest claim and a property interest claim.  According to Plaintiff, he has alleged that he was not provided either adequate pre-termination processes or post-termination processes.  Specifically, Plaintiff alleges he was not allowed to cross-examine witnesses, was subject to biased

and inadequate processes, and was denied impartial panel participants in the investigations against him.  Plaintiff also alleges that his reputation was damaged. Further, Plaintiff argues that exhaustion does not apply because he was not required to participate in an unconstitutional and inadequate process that was futile.

"[A]n employee fired under circumstances placing a stigma on his reputation is entitled to notice and a 'name-clearing' hearing." *Christiansen v. West Branch Cmty. Sch. Dist.*, 674 F.3d 927, 934 (8th Cir. 2012).  In the Eighth Circuit, both a post-termination and pre-termination clearing hearing may be required. *Winskowski*, 442 F.3d at 1110.  For a pre-termination process, the employee must have notice of the charges, an explanation of the employer's evidence, and an opportunity to respond. *Christiansen*, 674 F.3d at 936; *see also Winskowski*, 442 F.3d at 1110.  An informal meeting with a supervisor can be sufficient if these basic elements are met. *Christiansen*, 674 F.3d at 936.  As to the post-termination process, "a government employee cannot recover for a due process violation where the employee simply failed to avail himself of the post-termination process that was available." *Winskowski*, 442 F.3d at 1110; *see also Riggins v. Bd. of Regents of the Univ. of Neb.*, 790 F.2d 707, 712 (8th Cir. 1986).

"A public employee with a protected property interest in continued employment receives sufficient due process if he receives notice, an opportunity to respond to the charges before his termination, and post-termination administrative review." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).  For denial of a property interest, a plaintiff must exhaust state remedies before bringing suit under § 1983. *Hopkins v. City of Bloomington*, 774 F.3d 490, 492 (8th Cir. 2014) ("Under federal law, a litigant

13

asserting a deprivation of procedural due process must exhaust state remedies before such an allegation states a claim under § 1983.") (quoting *Wax'N Works v. St. Paul*, 213 F.3d 1016, 1019 (8th Cir. 2000)); *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009) (same). A plaintiff "cannot complain of a violation of procedural due process when he has not availed himself of existing procedures." *Anderson v. Douglas Cnty.*, 4 F.3d 574, 578 (8th Cir. 1993).

Here, the Court concludes that the pre-termination process was adequate. The Eighth Circuit has held that a pre-termination hearing "need not be elaborate. *Winskowski*, 442 F.3d at 1110 (citation omitted). The employee must have "notice of the charges . . ., an explanation of the employer's evidence, and an opportunity [for the employee] to present his side of the story." *Id.* (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)). For instance, an "informal meeting[] with supervisors" may constitute a sufficient pre-termination hearing. *See, e.g.*, *Riggins*, 790 F.2d at 711. Here, there is no dispute that Plaintiff had notice of the charges and an explanation of the employer's evidence. In fact, Plaintiff, himself details each instance he was investigated and all of the problems with the evidence upon which the employer relied. (*See generally* Am. Compl.) Further, Plaintiff admits that he had the opportunity to present his side of the story on multiple occasions. (*See, e.g.*, Am. Compl. ¶¶ 5, 6 ("Plaintiff denied the allegations in the complaints or incidents leading to the investigations, and/or appealed these conclusions to varying degrees." And, "[i]n at least one of the investigations . . . Plaintiff presented evidence . . ."). Plaintiff argues that he should have been able to cross-examine or examine witnesses, but this is not a

14

requirement for adequate pre-termination process in the Eighth Circuit. *See Loudermill*, 470 U.S. at 546. Thus, Plaintiff fails to state a claim on this basis.

Regarding the post-termination process, the Court also concludes that the process was also adequate and therefore Plaintiff cannot state a claim for violation of his procedural due process rights. Plaintiff admits that the January 22, 2014 decision "would be subject to further review, whether by certiorari or arbitration," but that instead of participating in any post-termination proceedings, Plaintiff withdrew from the UMN's process "based on the futility of the process and its inherent unfairness and bias towards him." (Am. Compl. ¶¶ 20-21.) Thus, there is no question that Plaintiff failed to participate in the post-termination arbitration process available to him, as well as the available process for an appeal to the Minnesota Court of Appeals. (*See* Doc. No. 16 ("Smith Aff.") ¶ 7, Ex. 5.)[3] As a result, the law is clear that Plaintiff cannot now claim that the process was inadequate. *Winskowski*, 442 F.3d at 1110 (A "government employee cannot recover for a due process violation where the employee simply failed to avail himself of the post-termination process that was available.").

Further, the Court agrees with Defendant that Plaintiff has failed to meet exhaustion requirements. In the Eighth Circuit, "a litigant asserting a deprivation of procedural due process must exhaust state remedies before such an allegation states a

---

[3]   The Court may properly consider the UMN's grievance procedure as a document that is necessarily embraced by the complaint in deciding this motion to dismiss. *See Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) ("Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading.") (citation omitted).

claim under § 1983." *Wax'N Works*, 213 F.3d at 1019; *see also Hopkins*, 774 F.3d

at 492; *Crooks*, 557 F.3d at 848-49.  Plaintiff admits he did not follow the administrative

processes available to him.  Instead, Plaintiff counters that "it is axiomatic that a plaintiff

need not go through the motions of administrative process where such process is futile or

otherwise useless, damaging or a sham."  (Doc. No. 24 at 15 (citing *McCarthy v.

Madigan*, 503 U.S. 140 (1992)).)  According to Plaintiff, the process was inadequate

because Plaintiff has a right to confront and cross-examine his accuser.  Plaintiff also

claims that the entire process was not fair or impartial and as a result was futile.  Plaintiff

points to a number of his allegations in support of these arguments.  For example,

Plaintiff discusses the alleged collusive first complainant, reliance on a faulty

investigation, the failures to reconsider certain decisions, reliance on stale accusations,

and a failure of certain parties to recuse from the process.

However, Plaintiff's futility argument fails in this case.  First, the question of

futility is not based on the subjective views of the person asserting that futility.  Instead,

the question is whether the process could grant effective relief.  *See, e.g., Ace Prop. &

Cas. Co. v. Fed. Crop Ins. Corp*, 440 F.3d 992, 1000 (8th Cir. 2006).  Further, futility

requires certainty that an appeal will fail, not just speculation.  *See Brown v. J.B. Hunt

Transp. Servs.,Inc.*, 586 F.3d 1079, 1085 (8th Cir. 2009) (stating that the futility

exception is narrow and mere doubt that an appeal will result in a different decision is

insufficient); *see also Norby v. Twin City Carpenters & Joiners Health & Welfare Fund*,

Civ. No. 07-4453, 2008 WL 918716, at *2-3 (D. Minn. Apr. 1, 2008) (holding that

speculation that an appeal would have the same result because it involves the same

16

trustees that denied the original claim does not establish futility).  Second, and perhaps more importantly, the Court agrees with Defendants that the futility exception is not typically applied to § 1983 claims like Plaintiff's and is instead considered in different contexts.  *See, e.g., Brown v. J.B. Hunt*, 586 F.3d at 1085 (examining futility with respect to ERISA's exhaustion requirements).  Therefore, even if Plaintiff's allegations of futility were not considered speculative, Plaintiff must still exhaust the procedures available to him prior to seeking relief in federal court.  The question of the inadequacy and futility of the processes available to Plaintiff, is the very question Plaintiff should have put to either arbitration or appeal and thus was not exhausted such that it can properly be considered here.  Thus, Plaintiff fails to adequately allege that he was deprived of post-termination process and Plaintiff cannot show that he has met exhaustion requirements.

In sum, taking all of the facts as alleged by Plaintiff as true, Plaintiff fails to adequately state any claims for relief and therefore his claims must be dismissed.

## ORDER

Accordingly, based on the foregoing, and on the files, records, and proceedings, herein, and the Court being otherwise duly advised in the premises, **IT IS HEREBY ORDERED** that:

1.    Defendants' Motion to Dismiss (Doc. No. [13]) is **GRANTED**.

2.    Plaintiff's claims (Doc. No. [8]) are **DISMISSED WITHOUT PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  October 20, 2015            s/Donovan W. Frank
                                    DONOVAN W. FRANK
                                    United States District Judge